UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAJUAN F.[1],

                    Plaintiff,                Civil Action No. 24-11094

v.                                      Mark A. Goldsmith
                                        United States District Judge

COMMISSIONER OF               David R. Grand
SOCIAL SECURITY,             United States Magistrate Judge

                    Defendant.

_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)**

Plaintiff Lajuan F. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act during the relevant time

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

period is supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Plaintiff filed his application for DIB in May 2021, and alleged a disability onset date of March 28, 2019, at which time he was 32 years old. (PageID.88, 187). At 6'0" tall, he weighed approximately 295 pounds during the relevant time period. (PageID.88). He completed high school. (PageID.60). He lives in a house with his family. (PageID.89). Previously, he worked as a material handler, material coordinator, passenger service representative, and cargo and ramp services manager. (PageID.47, 92). Plaintiff alleges a disabling condition of IVDS w/ degenerative arthritis; left lower radiculopathy moderate incomplete paralysis; and right lower radiculopathy mild incomplete paralysis. (PageID.88).

After Plaintiff's application for DIB was denied at the initial level on October 7, 2021 (PageID.87), and upon reconsideration on June 1, 2022 (PageID.100), he timely requested a hearing, which was held on January 13, 2023, before ALJ Latanya White Richards (PageID.54-86). Plaintiff, who was represented by non-attorney Carl Groves, Jr., testified at the hearing, as did vocational expert ("VE") Deborah Dutton-Lambert. (*Id.*). On February 1, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled between his alleged onset date (March 28, 2019) and the date of the ALJ's decision

(February 1, 2023).  (*Id.*, PageID.36-49).  On May 30, 2023, the Appeals Council denied review.  (PageID.22-25).  Plaintiff timely filed for judicial review of the final decision. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to his conditions and resulting limitations during the relevant time period.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act.   At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 28, 2019, the alleged onset date.  (PageID.41).  At Step Two, the ALJ found that, during this period of time, Plaintiff had the severe impairments of degenerative disc disease and spondylosis of the lumbar spine; status post anterior lumbar interbody fusion ("ALIF") in 2017; and obesity.  (*Id.*).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.42).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding

that, through the date of the decision, he was capable of performing light work, with the following additional limitations:

> can stand and/or walk for up to 4 hours per 8-hour workday; can sit for a total of 4 hours per 8-hour workday; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crawl, and crouch; must avoid exposure to unprotected heights, hazardous machinery, and standing or walking on narrow, slippery, or moving surfaces; requires the option to alternate between sitting and standing at 15-minute intervals.

(PageID.42-43).

At Step Four, the ALJ found that, through the date of the decision, Plaintiff was unable to perform any past relevant work. (PageID.47). At Step Five, the ALJ found, based in part on the VE's testimony, that during the relevant time period, given Plaintiff's age, education, work experience, and RFC, he was capable of performing unskilled light work as a cashier (46,000 jobs nationally), merchandise marker (45,000 jobs), and mail sorter (58,000 jobs). (PageID.48). Thus, the ALJ concluded that Plaintiff was not disabled under the Act from March 28, 2019, through the date of the decision. (PageID.49).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

D.     **Analysis**

In his motion for summary judgment, Plaintiff raises three arguments.  First, he argues that substantial evidence does not support the ALJ's finding at Step Five.  (ECF No. 11, PageID.475-89).  Second, he argues that substantial evidence does not support the ALJ's evaluation of his subjective symptoms.  (*Id.*, PageID.489-93).  Third, he argues that the ALJ reversibly erred by including a "vague" sit/stand option when formulating the RFC.  (*Id.*, PageID.493-95).  The Court addresses each argument in turn.

*1.     Substantial Evidence Supports the ALJ's Finding at Step Five*

Plaintiff first argues that substantial evidence does not support the ALJ's Step Five finding because the ALJ failed to question the VE about her testimony that he could perform a significant number of jobs in the national economy.  Plaintiff argues that this was reversible error because the VE "provided no source or method or basis for the jobs numbers," which he contends were "simply plucked from thin air."  (ECF No. 11, PageID.477).  The Commissioner responds that the Sixth Circuit has already rejected Plaintiff's exact argument in *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022), and that it was appropriate for the ALJ to rely on the VE's testimony and DOT in making her Step Five finding.  (ECF No. 13, PageID.504-08).  The Court concurs with the Commissioner that *Moats* is controlling in this case.

In *Moats*, the Sixth Circuit held that the ALJ's reliance on a qualified VE's testimony and the DOT provides substantial evidence supporting the ALJ's finding at Step Five:

[]  Moats  challenges  the  ALJ's  finding  that,  despite  Moats's

7

impairments, he could perform a significant number of jobs in the national economy.  Critical to the ALJ's conclusion was the vocational expert's testimony indicating that Moats could work in a number of positions (for example, as a general office clerk, addresser, or surveillance monitor) that together comprise approximately 32,000 jobs nationwide.

How should a factfinder go about valuing a vocational expert's testimony?  We can derive the answer in part from the Supreme Court's *Biestek* decision.    Vocational experts, *Biestek* explained, are "professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings."  139 S. Ct. at 1152.  The experts provide "current knowledge" about the nature and availability of various jobs based on publicly available data as well as the experts' own experience in job placement or career counseling.  *Id.* at 1152–53 (citation omitted).  ALJs will often rely on vocational experts to determine what kind of work (if any) a claimant could perform.  *See id.*; 20 C.F.R. §§ 404.1566(e), 416.966(e).  And, as *Biestek* suggests, when a qualified vocational expert testifies that a person with the claimant's work experience and physical limitations could perform a significant number of jobs available in the national economy, the ALJ has a solid basis for denying disability benefits.  *See Biestek*, 139 S. Ct. at 1155–57 (holding that a vocational expert's testimony identifying a significant number of sedentary jobs the claimant could perform was substantial evidence supporting the denial of benefits); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004); *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  Especially so, we note, when the vocational expert is well-credentialed and "has a history of giving sound testimony about job availability in similar cases."  *Biestek*, 139 S. Ct. at 1155.

With this backdrop in mind, we agree that the vocational expert's testimony at Moats's hearing amounted to substantial evidence supporting the ALJ's decision.  For one thing, the expert is well-credentialed.  He is certified by the American Board of Vocational Experts, has worked for Ohio's Bureau of Vocational Rehabilitation for 30 years, and has testified as a vocational expert in at least 22 similar hearings since 2007—credentials even stronger than those of the expert in *Biestek*.  *See id.* at 1153 (noting that the *Biestek* expert had been an employment counselor for ten years and served as a vocational expert in disability hearings for five years).  For another thing, his assessment that Moats could perform a number of available jobs was consistent with data from the Dictionary of Occupational Titles, published by the

8

Department of Labor.  *See* 20 C.F.R. §§ 404.1566(d)(1); 416.966(d)(1) (explaining that the ALJ will consider the Dictionary of Occupational Titles when determining whether jobs appropriate for the claimant exist in the national economy in significant numbers); *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) (order) ("[Dictionary of Occupational Titles] data can establish the existence of jobs in the national economy in significant numbers.").  These twin considerations bolster the value of the expert's testimony as well as the ALJ's decision to rely on that testimony in denying Moats's claim.

Moats disagrees.  As he sees things, the vocational expert's testimony lacks reliability for two reasons.  First, the expert did not produce (nor did the ALJ request) the survey data supporting the expert's testimony about national job numbers.  *Biestek*, however, explains that testimony from a well-credentialed expert "will clear (even handily so) the more-than-a-mere-scintilla threshold" even in the absence of underlying survey data.  139 S. Ct. at 1157.  Second, Moats contends that neither the expert nor the ALJ specified the threshold number of suitable jobs required to constitute a "significant" number of jobs for purposes of benefits considerations.  But this argument too falls flat.  Congress did not define "significant" in the Social Security Act.  Nor has the Commissioner defined the term by rule.  In the absence of a statutory or regulatory command, we have said that the ALJ must make the determination on a case by case basis.  *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).  And the ALJ's finding here that 32,000 suitable jobs exist across the nation "fits comfortably within what this court and others have deemed 'significant.' "  *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. Appx 574, 579 (6th Cir. 2009) (2,000 jobs); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs); *Barker v. Sec'y of Health & Hum. Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs).

In sum, the expert's uncontradicted testimony easily qualifies as "the kind of evidence—far more than a mere scintilla—that a reasonable mind might accept as adequate to support a finding about job availability."  *Biestek*, 139 S. Ct. at 1155 (quotation marks omitted).

*Moats*, 42 F.4th at 562-63.

Here, as in *Moats*, VE Dutton-Lambert's testimony at Plaintiff's hearing amounted to substantial evidence supporting the ALJ's Step Five finding.  First, VE Dutton-Lambert

is "well-credentialed," as she is a Certified National Rehabilitation Counselor, has worked as a vocational rehabilitation consultant and vocational officer for over 30 years since the 1980s, is "[s]killed in the use of the Dictionary of Occupational Titles (DOT), the Guide for Occupational Exploration (GOE), [t]he Revised Handbook for Analyzing Jobs, and Selected Characteristics of Occupations (SCO)," and has testified as a vocational expert for the SSA since 2013.  (PageID.312-13); *see Biestek*, 139 S. Ct. at 1153 (noting that the *Biestek* expert had been an employment counselor for ten years and served as a vocational expert in disability hearings for five years). Second, the ALJ confirmed that the VE's testimony that Plaintiff could perform a number of available jobs was consistent with the DOT, and to the extent that "the DOT and its companion publications do not address variations in sitting, standing, and walking within any category of exertion, nor [] differentiate climbing ladders, ropes, and scaffolds versus ramps and stairs," the VE testified that her response to those elements of the ALJ's hypotheticals "were based on [her] education, professional training, and experience set forth in [her] resume contained on file."  (PageID.82-83).[2]   Finally, Plaintiff's representative cross-examined the VE and questioned her about three hypotheticals with additional limitations, but did not raise any challenge to the basis of the VE's opinion.   (PageID.83-85).   As such, the VE's uncontradicted testimony "easily qualifies" as substantial evidence supporting the ALJ's determination at Step Five.

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff's attempt to

---

[2] During the hearing before the ALJ, Plaintiff and his counsel confirmed that they did not have any objections to Ms. Dutton-Lambert's credentials or her testifying as a VE.  (PageID.66).

distinguish *Moats* from this case lacks merit.  The Sixth Circuit in *Moats* did not, as Plaintiff contends, state that the VE "actually testified on the record about the 'survey data supporting the expert's testimony about national job numbers.'"  (ECF No. 476-77). Rather, a careful reading of *Moats* makes clear that the Sixth Circuit rejected the claimant's argument that "the expert did not produce (nor did the ALJ request) the survey data supporting the expert's testimony about national job numbers," and held that the VE's testimony provided substantial evidence "even in the absence of underlying survey data." *Moats*, 42 F.4th at 563 ("*Biestek*, however, explains that testimony from a well-credentialed expert 'will clear (even handily so) the more-than-a-mere-scintilla threshold' even in the absence of underlying survey data.").  The underlying district court case in *Moats* confirms that, like Plaintiff's case here, the VE's "job-numbers testimony" was "[b]ased upon the Dictionary of Occupational Titles and his own education and experience" and "did not explain the methodology underlying this testimony."  *Moats v. Comm'r of Soc. Sec.*, No. 3:20-CV-265, 2021 WL 2216804, at *5 (N.D. Ohio June 2, 2021) ("Even so, a 'reasonable mind might accept' [the VE's] education and decades of experience 'as adequate to support' his job-numbers testimony."), *aff'd,* 42 F.4th 558 (6th Cir. 2022).

Indeed, it is well-settled in the Sixth Circuit that "[t]o establish that work exists in the national economy, the ALJ can rely on evidence such as testimony of a VE and the DOT," as "various governmental publications such as the DOT" are sources of "reliable job information."  *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); *see also Oneal v. Soc. Sec. Comm'r*, No. 4:17-CV-11380-TGB, 2018 WL 5532486 (E.D. Mich. Oct.

11

29, 2018) ("Most notably, post-*Cunningham*, the Sixth Circuit directly held, in a published decision that the Dictionary of Occupational Titles (DOT) remains a reliable source of evidence[.]"), *aff'd sub nom. O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313 (6th Cir. 2020).  At the hearing before the ALJ, the VE expressly testified that her opinion was based on "the DOT and its companion publications," as well as her "education, professional training, and experience set forth in [her] resume contained in the file."  (PageID.82-83; *see* PageID.312-13).  Thus, it was not reversible error for the ALJ to rely on the VE's testimony to determine that Plaintiff could perform a significant number of jobs in the national economy.

For all of the foregoing reasons, substantial evidence supports the ALJ's finding at Step Five.

> ### 2.  *Plaintiff Fails to Show Reversible Error in the ALJ's Evaluation of His Subjective Complaints, which is Supported by Substantial Evidence*

Plaintiff next argues that the ALJ "violated SSR 16-3p by discounting [his] subjective symptoms based solely on objective medical evidence."  (ECF No. 11, PageID.489).  He argues that the ALJ "failed to build a logical bridge between inconsistencies in the evidence and her reason for discounting [his] testimony . . . by not explaining where the inconsistencies existed."  (*Id.*, PageID.491).  For the reasons stated below, the Court finds that Plaintiff failed to show reversible error in the ALJ's assessment of his subjective complaints.

Plaintiff's argument that the ALJ's finding was "based solely on objective medical evidence" is belied by a full and fair reading of the ALJ's decision.  For instance, the ALJ

discussed Plaintiff's conservative treatment regimen, suggesting that his symptoms were not as intense as Plaintiff alleged.  *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (stating that a "conservative treatment approach suggests the absence of a disabling condition").  The ALJ noted that, prior to his disability onset date, Plaintiff had a history of lumbar fusion surgery back in June 2017, after which Plaintiff "did feel better."  (PageID.44).  The ALJ then considered that, in January 2020, Plaintiff "started having more pain, including in the left lower back with radiation into the left hip" but, by October 13, 2021, Plaintiff was merely using "ibuprofen to manage his pain as needed," and by January 13, 2022, he was "advised on home exercises and NSAID medication to deal with back pain" with a "possibility of epidural steroid injections as well."  (PageID.45; *see* PageID.373 (reporting left hip pain in October 2021 that is "[w]orse with prolonged standing or back / hip strain," but "improved with use of ibuprofen."); PageID.398 (reporting in January 2022 an "increase in back pain as a discomfort" but that "[h]e has been well" and "has been fully active," and recommended "NSAIDs and back range of motion and core strengthening exercises," with possible benefit from epidural steroid)).  By August 12, 2022, Plaintiff reported that "Lyrica medication had been helpful with his back pain and neuropathy complaints and he continued with that medication."  (PageID.45; *see* PageID.452 (reporting in August 2022 that he had continued back pain with numbness radiating down his leg, but "he was taking lyrica which helped").  The ALJ also noted that Plaintiff never required the use of any assistive device.  (PageID.43, 46).

The ALJ also appropriately discussed Plaintiff's activities of daily living, including reports that he "is the primary caretaker for his five-year old son," he "tends to his own

personal care," he "does household chores, including laundry, cleaning, and watering flowers," he can "prepare meals" with breaks, he can "drive a car," and he is "able to leave his home alone." (PageID.44-44); *see Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children and performing household chores."); *Amir v. Comm'r of Soc. Sec.,* 705 F. App'x 443, 450 (6th Cir. 2017) ("But as we have previously noted, evidence regarding Amir's daily activities was plausibly contradictory. The ALJ's adverse inference was therefore justified under prevailing Sixth Circuit law."). To the extent Plaintiff argues that the ALJ "failed to properly analyze [his] daily activities" and "objects that the activities cited by the ALJ do not prove that []he can sustain employment . . ." (*Id.*, PageID.490), the Commissioner correctly responds that "the issue is not whether Plaintiff's daily activities supported a finding of full-time work, but whether Plaintiff's daily activities are consistent with his subjective allegations." (ECF No. 13, PageID.521); *see Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441-42 (6th Cir. 2017) ("The ALJ cited these activities as evidence that Shepard's testimony about the severity of her symptoms and her limited lifestyle was "not entirely credible," ***not to demonstrate that she was capable of light work***. It was entirely appropriate for the ALJ to consider whether Shepard's asserted limitations were consistent with her ability to drive, prepare simple meals, shop, and go to eat or the movies.") (emphasis added). Thus, it was appropriate here for the ALJ to determine that Plaintiff's daily activities were not entirely consistent with his subjective complaints.

In addition to these other factors, the ALJ properly considered that Plaintiff's

14

subjective complaints were inconsistent with the objective medical evidence.  For example, treatment records reflect that, in March 2020, Plaintiff reported pain in his left hip and knee, but a physical exam showed only "mildly reduced" range of motion in the lumber spine, with otherwise normal gait and normal range of motion in his musculoskeletal system.  (PageID.326, 328-29).  A CT scan of Plaintiff's lumbar spine in August 2020 revealed postsurgical changes in the lower lumbar spine at L5 and S1 with bipedicle screws and internal fixation screws without evidence of hardware complication, no acute compression fracture or spondylolisthesis, no osseous narrowing of the central canals or neural foraminal, and overall, only "minor abnormality."  (PageID.341-42).  The ALJ also considered that, in January 2022, Plaintiff reported "increase in back pain as a discomfort" but that he "has been well" and "has been fully active," and that his straight leg raising test was negative in both extended and sitting positions.  (PageID.398-99).  The ALJ also noted that physical exam findings in May 2022, showed that Plaintiff "ambulates with a normal gait, which is not unsteady, lurching, or unpredictable," he "does not require the use of a handheld assistive device," he "appears stable in standing, sitting, and supine positions, he had "normal" motion in the hips, knees, and ankles bilaterally with "some mild weakness" of "4/5" in the left lower extremity and "some mild limitation in motion" in the dorsolumbar spine, but normal straight leg raise tests in the sitting and supine positions, and that he "is able to stand on one leg at a time without difficulty" and "can walk on his toes and heels and perform tandem gait."  (PageID.409-10).  To the extent Plaintiff argues that the ALJ erred by "commenting on [his] 'normal gait' when walking in an exam room" because "it is unclear how this observation makes [Plaintiff's] testimony less credible"

(PageID.492-93), the ALJ's observation of Plaintiff's ability to perform certain physical movements in exams is relevant to assessing the consistency of Plaintiff's statements concerning the *intensity, persistence, and limiting effects* of his alleged symptoms with the physical capacity he actually demonstrated during numerous office visits.  In other words, while the record does reflect that Plaintiff reported experiencing pain with standing, walking, and sitting, the physical exams in the record routinely demonstrated his ability to walk normally without an aid, balance well, and maintain good range of motion and strength in his extremities, which provides substantial evidence in support of the ALJ's determination that Plaintiff's subjective complaints as to the *severity* and *limiting effects* of his symptoms were not entirely consistent with the medical evidence.

Finally, the ALJ considered the medical opinions in this case, all of which provide substantial evidence in support of the ALJ's handling of Plaintiff's subjective complaints and her assessment of the RFC.  Specifically, medical consultative examiner Dr. Harold Nims, D.O., opined that Plaintiff had "mild weakness throughout the left leg with some mildly limited motion in the lumbar spine," "some mild limitation with squatting and bending," and that his "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling as well as pushing and pulling heavy objects is at least mildly impaired." (PageID.411-12).  Plaintiff's neurosurgeon, Dr. Frederick Junn, M.D., opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours in an 8-hour workday and for 60 minutes at one time; sit for 4 hours in an 8-hour workday and for 60 minutes at one time; and could occasionally bend, stoop, balance.  (PageID.418).  Lastly, state agency physician Byong-Du Choi, M.D.,

opined Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for 6 hours in an 8-hour workday with normal breaks; could sit for 6 hours in an 8-hour workday with normal breaks; and was only "mildly impaired" in bending, stooping, lifting, walking, crawling, squatting, carrying, and pushing/pulling heavy objects.   (PageID.96-98).   Dr. Choi also determined that Plaintiff's subjective statements were not consistent with the medical evidence and other evidence in the record. (PageID.96).   Plaintiff fails to challenge any of these opinions assessing less restrictive limitations than the ALJ assessed, which provides substantial evidence in support of the ALJ's RFC and her determination that Plaintiff's subjective complaints were not entirely consistent with the record evidence.

In conclusion, the ALJ sufficiently articulated why Plaintiff's subjective complaints were not entirely consistent with the record, which analysis is supported by substantial evidence.   While Plaintiff points to evidence that supports his allegations of pain, "[t]he fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant."   *Crisp v. Sec'y of Health and Human Servs.*, 790 F.2d 450, 452 n.4 (6th Cir. 1986).   Rather, the ALJ's evaluation of a claimant's subjective symptoms is entitled to "special deference," *Biestek*, 880 F.3d at 788, and cannot be disturbed absent a "compelling reason."   *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013).   As discussed above, no such compelling reason exists here.

      3.    *Plaintiff Fails to Show Reversible Error in the ALJ's RFC Finding,*
          *Which is Supported by Substantial Evidence*

Finally, Plaintiff argues that the ALJ reversibly erred because the sit/stand option in the RFC was "vague," as it did not "state the length of time needed in the alternate position" and "only stated the frequency of alternating positions – 15 minutes." (ECF No. 11, PageID.494-95). He argues that the ALJ also "failed to explain the basis for her finding that [Plaintiff] was capable of alternating positions every 15 minutes and that he could remain on task while changing his position." (*Id.*, PageID.495). Plaintiff's arguments lack merit.

During the administrative hearing, the ALJ asked the VE whether any jobs existed in the national economy that could be performed by a hypothetical individual of Plaintiff's age, education, and past job history capable of light work who can stand and walk for only 4 hours combined in an 8-hour workday, sit for a total of 4 hours in an 8-hour workday, can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds, can occasionally stoop, kneel, crawl, and crouch, and must avoid exposure to unprotected heights and hazardous machinery and avoid standing or walking on narrow, slippery, or moving surfaces. (PageID.80-81). The VE testified that such an individual could perform work at the light unskilled level of exertion as a cashier, merchandise marker, and mail sorter. (*Id.*). More notably, the VE explained that these jobs exist in significant numbers in the national economy *even when reduced to acknowledge the number of these positions that are allowed to be performed while sitting or standing*:

> At the light unskilled level of exertion, the hypothetical individual could work as a cashier, DOT code 211.462-010. It has an SVP of 2, unskilled

work. ***I'm reducing this number by 90 percent as approximately 10 percent of cashiers can sit and stand alternatively***. At the reduced number nationally, there are approximately 46,000 positions at the light, unskilled level. The hypothetical individual could work as a merchandise marker, DOT code 209.587-034. It has an SVP of 2, unskilled work. But then, ***I'm reducing this number by two-thirds as approximately one-third of merchandise markers can sit and sit alternatively when marking small items, such as jewelry and sunglasses.*** At the reduced number nationally, there are approximately 45,000 positions at the light unskilled level. And the individual could work as a mail sorter, DOT code 222.687-022. It has an SVP of 2, unskilled work. ***I'm reducing this number by 50 percent as approximately 50 percent of mail sorters can sit and stand alternatively.*** At the reduced number nationally, there are approximately 58,000 positions at the light, unskilled level.

(PageID.81) (emphasis added).

The ALJ then proposed to the VE the same hypothetical, but included a "more specific" limitation of an "option to shift positions between sitting and standing at 15 minute intervals." (PageID.82) ("Now, under the first hypothetical, if an individual were exercising or needing to exercise the option and I know you talked about the jobs that you described had factored in the ability to sit and stand, but I just want it to be more specific."). After confirming that such hypothetical individual "would be sitting for 15 minutes and standing for 15 minutes. And then, sitting for 15 minutes, back and forth," the VE confirmed that this sit/stand option does "not affect [her] testimony" as to job numbers. (PageID.82-83).

The above makes clear the ALJ's RFC expressly includes a limitation for an option to alternate between sitting and standing at 15-minutes intervals, *i.e.*, "would be sitting for 15 minutes and standing for 15 minutes. And then, sitting for 15 minutes, back and forth." (PageID.82). Moreover, to the extent Plaintiff argues that the ALJ "failed to explain the

19

basis for her finding that [Plaintiff] was capable of alternating positions every 15 minutes and that he could remain on task while changing his position," the ALJ relied on the VE's testimony, which had "reduced the available number" of cashier, merchandise marker, and mail sorter jobs to acknowledge the percentage of those positions in which the worker is "allowed to perform that job while sitting *or* standing."   (PageID.48) (emphasis added). And, as discussed above, it was not improper for the ALJ to rely on the VE's testimony, and the ALJ's RFC is supported by substantial evidence in the record, including treatment notes documenting relatively normal exam findings and conservative treatment, Plaintiff's reported activities of daily living, and the medical opinions in the record.   Finally, Plaintiff's counsel cross-examined the VE during the hearing, but did not challenge the VE's opinion in this regard when she had the opportunity to do so.  *See Oneal v. Soc. Sec. Comm'r*, No. 4:17-CV-11380-TGB, 2018 WL 5532486, at *4 (E.D. Mich. Oct. 29, 2018) ("Plaintiff failed to take advantage of the opportunity to cross-examine the VE regarding her opinions by questioning whether the DOT was an adequate source, or upon what other grounds the VE based her opinion.  As such, the ALJ had no duty to convene a second hearing to pepper the VE with questions that [plaintiff] could have raised initially."), *aff'd sub nom. O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313 (6th Cir. 2020).  Accordingly, Plaintiff failed to show any reversible error regarding the ALJ's sit/stand option in the RFC, which is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Plaintiff's Motion for

Summary Judgment **(ECF No. 11)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: June 17, 2025                          s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                                    United States Magistrate Judge

### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 17, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
